USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/21/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
    UNITED STATES,

               -v-                                      1:18-cr-902-GHW

    WALTER CASTILLO,                            ORDER

                                  Defendant.
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

      Walter Castillo was sentenced to 36 months imprisonment for selling crack and heroin laced with fentanyl. Now, he moves for compassionate release as a result of the COVID-19 pandemic. Because his showing regarding the incremental risk associated with COVID-19 is not compelling, and because the Court's evaluation of the sentencing factors does not support a modification of the below-guidelines sentence imposed on Mr. Castillo, his motion is denied.

## I.    BACKGROUND

      On September 25, 2019, the Court sentenced Walter Castillo to a term of 36 months imprisonment. Sentencing Transcript, Dkt. No. 63 ("Tr."). That sentence represented a substantial downward variance from the advisory guidelines range associated with his crime of conviction—participation in a drug trafficking conspiracy that sold substantial quantities of crack, and, in Mr. Castillo's case, heroin laced with fentanyl.

      Mr. Castillo was born in April 1985. Tr. at 24:14. At the time of his sentencing, the Court understood that the defendant suffered from a number of issues with his health. "Mr. Castillo's hands have been injured in a fall, as well as from an assault while he was at Rikers Island, leaving him with only partial mobility in his hands. He was shot in the foot and has used a cane to help him walk. He's using a cane here today. Unfortunately, he was also stabbed during his period of

incarceration at the MCC.  As counsel described, he has had a difficult time with his prior periods of incarceration and this one.  And I take that into account in sentencing him here." Tr. at 25:17-25.  Mr. Castillo also suffered from a number of mental health issues, including post-traumatic stress disorder, depression and anxiety.  Tr. at 26:1-8.  Mr. Castillo also had a very long history of substance abuse.  Tr. at 26:15-16 ("The list is far too long, and includes too many drugs taken way too frequently.")  Mr. Castillo's multiple prior efforts to participate in substance abuse programs had were not successful "as evidenced by his unfortunate tragic history of near continuous drug use over the last several years . . . ."  Tr. at 26:19-20.

The Court was aware of those health concerns when it sentenced Mr. Castillo, and they were a substantial factor in the Court's decision to vary downward from sentencing range recommended by the sentencing guidelines.

Just over eight months after he was sentenced, on May 21, 2020, the Court received a letter from Mr. Castillo, acting *pro se*, requesting that the Court order his compassionate release pursuant to 18 U.S.C. § 3582(c).  Dkt. No. 65.  The Court denied that request on June 1, 2020 because Mr. Castillo had not demonstrated that he had satisfied the statutory preconditions to a motion for compassionate release.  Dkt. No. 64.  On August 24, 2020, Mr. Castillo submitted a supplemental letter, attaching proof that he had requested that the warden file a motion on his behalf and that he had been rejected, satisfying the statutory preconditions to his motion.  Dkt. No. 78.  The Court requested that the Government file an opposition to the motion.  Dkt. No. 79.  The Government filed its opposition on September 8, 2020 (the "Opposition").  Dkt. No. 80.  Mr. Castillo has not filed a response.

Mr. Delgado's motion points to his asthma and "chronic illnesses" as the basis for the Court to order his compassionate release.  Mr. Delgado did not disclose his asthma in connection with the preparation of the pre-sentence report or at sentencing.  The Government's opposition asserts that

2

"the defendant has not reported any asthmatic episodes since childhood." Opposition at 5. The Opposition also asserts that the institution at which Mr. Castillo is incarcerated, FCI Allenwood "has not had a single confirmed case of COVID-19 since the outbreak began." Opposition at 1.

## II. LEGAL STANDARD

As a general rule, courts are prohibited from modifying a defendant's term of imprisonment once it has been imposed. 18 U.S.C. § 3582(c) ("The court *may not* modify a term of imprisonment once it has been imposed except" in specified circumstances) (emphasis added). The statute provides for specific exceptions to that general rule: "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," "after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that--extraordinary and compelling circumstances warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

"Congress has delegated authority to the Sentencing Commission ('USSC') to 'describe what should be considered extraordinary and compelling reasons for sentence reduction.'" *United States v. Ebbers*, — F. Supp. 3d —, No. (S4) 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (quoting 28 U.S.C. § 994(t)). The relevant policy statement is U.S.S.G. § 1B1.13 (the "Policy Statement"). The Policy Statement states that a court may reduce a defendant's term of imprisonment

> if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> > (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

3

>    (2)  the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>    (3)  the reduction is consistent with this policy statement.

1 U.S.S.G. § 1B1.13.

The commentary to the Policy Statement provides guidance regarding the circumstances in which "extraordinary and compelling reasons" for a reduction in a defendant's sentence exist.[1] The commentary highlights three particular grounds for such a finding: the medical condition of the defendant; the age of the defendant; and family circumstances. 1 U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The Court is not limited to the consideration of those factors alone, however. The Policy Statement anticipates that other reasons can support a finding of extraordinary and compelling circumstances that permit a sentence reduction. 1 U.S.S.G. § 1B1.13 cmt. n.1(D) (permitting a finding of extraordinary or compelling circumstances when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C) [medical condition, age, and family circumstances of the defendant]"); *see also United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *6-7 (S.D.N.Y. Apr. 6, 2020) (outlining the discretion of district courts in evaluating extraordinary and compelling circumstances).

The Policy Statement states that the following medical conditions are sufficient to support a finding of extraordinary and compelling reasons for a reduction in a defendant's sentence:

---

[1] The Policy Statement has not been updated since the passage of the First Step Act of 2018 (the "First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194. The First Step Act amended 18 U.S.C. § 3582 to permit a defendant to bring a motion for compassionate release if the BOP chose not to file one on his behalf. The language of the Policy Statement does not reflect the fact that under the First Step Act, the Court will be making determinations regarding the existence of compelling and extraordinary circumstances without the input of the BOP. As the court observed in *Ebbers* the Policy Statement "is at least partly anachronistic because it has not yet been updated to reflect the new procedural innovations of the First Step Act. For example, it refers in its opening line to a 'motion of the Director of the Bureau of Prisons.'" *Ebbers*, 2020 WL 91399, at *4. Similarly, the commentary's formulation of the catch-all provision refers only to a determination by the BOP, not by a district court. 1 U.S.S.G. § 1B1.13 cmt. n.1(D) ("As determined by the Director of Prisons, there exists . . . .").

>(A) Medical Condition of the Defendant.—
>
>(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>(ii) The defendant is—
>(I) suffering from a serious physical or medical condition,
>(II) suffering from a serious functional or cognitive impairment, or
>(III) experiencing deteriorating physical or mental health because of the aging process,
>
>that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

1 U.S.S.G. § 1B1.13 cmt. n.1(A).  According to the commentary to the Policy Statement, compelling medical conditions require a showing of a substantial, actual deterioration in the medical condition of the defendant—either "a terminal illness" or "a serious physical or medical condition . . . from which he or she is not expected to recover."

In this case—as in every other COVID-19 related compassionate release application that the Court has reviewed—the defendant's medical condition is not the type of "Medical Condition" described in the Policy Statement:  he is not suffering from a terminal illness, and he does not have a medical condition from which he is not expected to recover.  Instead, he is at risk of getting a disease, which in some cases is terminal.  So a finding of extraordinary and compelling circumstances in this case would rely not on the defendant's medical condition as described in the Policy Statement alone.  Instead, the courts that have found the existence of extraordinary and compelling circumstances for a reduction in a defendant's sentence as a result of COVID-19 rely on an evaluation of a combination of factors including the defendant's physical condition and the court's assessment of the incremental risk associated with COVID-19.  Many courts evaluating the existence of compelling and extraordinary circumstances also weigh the adequacy of the BOP's

5

response to the pandemic, perhaps with an eye to the policy objective of thinning jail populations to reduce the likelihood of the spread of the disease.  *See, e.g., United States v. El-Hanafi*, No. 10-CR-162 (KMW), 2020 WL 2538384, at *5 (S.D.N.Y. May 19, 2020); *United States v. Zubkov*, No. 14-CR-773 (RA), 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020).

This is difficult terrain for a court.  To the extent that an evaluation of the existence of extraordinary and compelling circumstances has evolved to require an assessment of the adequacy of the BOP's response—individual trial judges assessing individual cases on an emergency basis may not have the opportunity to assess all of the systemic considerations facing the institution.  And the assessment will vary by facility and time.  The BOP's response has evolved over the course of the pandemic:  one might reasonably be expected to have a different view of the adequacy of the BOP's response, and the threat to inmates, in March than in August.  Harder still is the task of deciding whether an inmate should face any incremental amount of risk—COVID-19 is dangerous; and life is invaluable.  For that reason, the Court looks to the Policy Statement and its commentary for guidance regarding what types of medical conditions should drive a finding of extraordinary and compelling circumstances that justify the reduction of a defendant's sentence.

### III.    DISCUSSION

COVID-19 is a global pandemic.  *See* https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen (last visited May 25, 2020).  Since its arrival in the United States, the federal and local governments have reacted to stem the risk associated with the disease.

The risk of death associated with the disease varies substantially based on the age of the infected patient.  *See, e.g.*, https://data.cdc.gov/NCHS/Provisional-COVID-19-Death-Counts-by-Sex-Age-and-S/9bhg-hcku (Last visited May 25, 2020).  For example, in New York City—the epicenter of the disease in the United States—the death toll has fallen disproportionately on people who were more than 75 years old.  *See* https://www1.nyc.gov/site/doh/covid/covid-19-data.page

(Last visited June 10, 2020) (showing 8,397 confirmed deaths from COVID-19 in the 75+ age bracket, or 48.66% of confirmed COVID-19 deaths). For people in the 18-44 age bracket, in which Mr. Castillo falls, the mortality rate was dramatically smaller. *Id.* (showing 678 confirmed deaths from COVID-19 in that age cohort, or 3.9% of confirmed COVID-19 deaths).

The risk of death from COVID-19 is greater for people with certain underlying health conditions. The Centers for Disease Control and Prevention track underlying health issues that are reported to be associated with deaths as a result of COVID-19. *See* https://data.cdc.gov/NCHS/Conditions-contributing-to-deaths-involving-corona/hk9y-quqm (Last visited August 30, 2020). The risk of death associated with those comorbidities also varies dramatically by age.

The Court is not persuaded by the defendant's arguments in support of a finding that "extraordinary and compelling" reasons exist for his release. While Mr. Castillo suffers from a number of physical ailments that led the Court to vary downward at sentencing, they are not conditions that have been identified to the Court as increasing the risk associated with COVID-19. And, as the Opposition notes, Mr. Castillo is not in an age cohort in which there is an enhanced risk of adverse consequences from COVID-19.

Even if Mr. Castillo's health conditions, and the incremental risk associated with the possibility of catching COVID-19 at his facility was sufficient to give rise to compelling and extraordinary reason for his release, the Court would not grant the requested relief.

In considering all of the § 3553(a) factors, the Court does not believe that a reduction in Mr. Castillo's sentence is warranted. While the factor related to the need for Mr. Castillo to receive medical care arguably weighs somewhat more heavily in favor of a lesser sentence now, the nature of his crime was very serious. And, unfortunately, the need for personal deterrence for Mr. Castillo remains high: he engaged in a conspiracy to sell substantial amounts of crack notwithstanding

7

several prior convictions. The Court's assessment of all of the other § 3553(a) sentencing factors, including the need for general deterrence, all continue to weigh heavily against a modification of his sentence now. In sentencing Mr. Castillo, the Court was very conscious of the admonition of § 3553 to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of the statute. The Court imposed a sentence that was substantially below the advisory guidelines range, and that the Court viewed as the lowest sufficient sentence given its assessment of all of the sentencing factors. The Court's assessment of the § 3553(a) factors do not yield a different conclusion today, notwithstanding COVID-19 and its complications.

In sum, having considered all of the information presented to the Court in connection with this application, the Court does not believe that a reduction in Mr. Castillo's sentence is warranted. His motion is DENIED.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to mail a copy of this order to Mr. Castillo.

SO ORDERED.

Dated: October 21, 2020

_____
GREGORY H. WOODS
United States District Judge